1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

BRIAN BALLENTINE, an individual;
CATALINO DAZO, an individual; KELLY
PATTERSON, an individual; and GAIL
SACCO, an individual,

Plaintiffs,

vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, in its official capacity;
DETECTIVE CHRISTOPHER T. TUCKER,
as an individual and in his official capacity as
a Las Vegas Police Department
Detective; SERGEANT MIKE WALLACE,
as an individual and in his official capacity as
a Las Vegas Metropolitan Police Department
Sergeant; and LIEUTENANT JOHN
LIBERTY, as an individual and in his official
capacity as a Las Vegas Metropolitan Police
Department Lieutenant,

Defendants.

Case No. 2:14-cv-01584-APG-GWF

**Order on Defendants' Motion to Dismiss**

(Dkt. #6)

Plaintiffs used sidewalk chalk to write messages critical of the Las Vegas Metropolitan Police Department ("Metro") on sidewalks in front of Metro's headquarters and a courthouse. Metro officers arrested plaintiffs because, according to defendants, writing on sidewalks with chalk violates Nevada's graffiti statute, Nevada Revised Statute § 260.330. Plaintiffs allege, however, that the real reason defendants arrested them is because plaintiffs criticized Metro, and their arrests therefore infringe on their free speech and liberty rights under the federal and Nevada constitutions.

Defendants move to dismiss plaintiffs' complaint. They argue that § 260.330 is a content-neutral, valid restriction of plaintiffs' right to chalk on public property. But even if that is true, plaintiffs have adequately alleged that defendants selectively enforced this statute against them because of their viewpoint. This is enough to allege First Amendment and Equal Protection

claims.  Plaintiffs also plausibly allege that Metro either sanctioned or ratified potential constitutional violations.

However, some of plaintiffs' claims cannot survive.  Their Fourth Amendment claims fail because the defendant officers had probable cause to arrest plaintiffs for alleged violations of Nevada's graffiti statute.   Moreover, the officers are entitled to qualified immunity on the Fourth Amendment claims because whether plaintiffs committed a crime by chalking on sidewalks was not clearly established.  Plaintiffs fail to plausibly allege due process and negligence claims. Finally, plaintiffs' claims against the defendant officers in their official capacities fail because these claims are redundant of the claims brought against Metro.

## I.    BACKGROUND[1]

Plaintiffs Brian Ballentine, Catalino Dazo, and Kelly Patterson are members of the "Sunset Activist Collective," a local activist group.[2]  Plaintiffs have carried out chalking protests on Las Vegas sidewalks since 2011.[3]  They have peaceably chalked, for example, in front of the University of Nevada, Las Vegas police station; Metro headquarters; Walmart; the Clark County Government Center; and the Regional Justice Center.[4]

On June 8, 2013, plaintiffs wrote messages criticizing Metro with chalk on the sidewalk in front of Metro's headquarters.[5]  Officers confronted the plaintiffs and told them they were going to be cited for defacing public property.[6]  The officers explained that Metro had discussed the chalking issue with various authorities—including a deputy district attorney, a judge, and the city manager—and that it had been determined marking with sidewalk chalk on public sidewalks

---

[1] The following facts are taken from plaintiffs' complaint.  I presume these facts are true for purposes of ruling on defendants' motion to dismiss. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).

[2] (Dkt. #1 at 6.)

[3] (*Id.*)

[4] (*Id.* at 6-7.)

[5] (*Id.* at 9-10.)

[6] (*Id.*)

violates Nevada Revised Statute § 260.330.[7]  That statute criminalizes "a person who places graffiti on or otherwise defaces the public or private property, real or personal, of another, without the permission of the owner."

About a month later, on July 13, 2013, Ballentine and Patterson chalked more messages critical of Metro on public sidewalks in front of Metro's headquarters.[8]  This time Metro officers did not cite Ballentine and Patterson; they sought arrest warrants against them.[9]

According to one of the warrant's supporting declarations, Metro was monitoring plaintiffs' social media to track their activities and knew that the group was planning a chalking event at the Regional Justice Center on July 18.[10]  Metro planned to attend plaintiffs' protest.[11]

On July 18, several of the plaintiffs chalked more messages critical of Metro, this time in front of the Regional Justice Center.[12]  Plaintiff Gail Sacco did not participate in the chalking because she was afraid of being arrested.[13]  Metro officers watched the plaintiffs for about an hour but took no further action.[14]

A few weeks later, on August 10, 2013, Ballentine and Patterson were charged with gross misdemeanors and conspiracy related to their alleged violation of § 206.330.[15]  The two were arrested on their way to chalk again at Metro's headquarters.[16]  Ballentine spent three days in jail; Patterson spent four.[17]

---

[7] (*Id.*)

[8] (Dkt. #1 at 10.)

[9] (*Id.*)

[10] (*Id.*)

[11] (*Id.*)

[12] (*Id.* at 11.)

[13] (*Id.*)

[14] (*Id.*)

[15] (*Id.* at 11-12.)

[16] (*Id.*)

[17] (*Id.*)

Plaintiffs allege Metro does not harass, cite, or arrest children for writing or drawing on public sidewalks with chalk.[18]  Likewise, plaintiffs allege Metro does not harass, cite, or arrest adults who write or draw messages with sidewalk chalk on public sidewalks when the messages are not critical of Metro.[19]

## II.    LEGAL STANDARD: MOTION TO DISMISS

A complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[20]  While Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[21]  "Factual allegations must be enough to rise above the speculative level."[22]  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[23]

Courts apply a two-step inquiry when considering a motion to dismiss.  First, the court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to this assumption of truth.[24]  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[25]  Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[26]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable.[27]  Where the complaint does not permit the court

---

[18] (*Id.* at 12.)

[19] (*Id.*)

[20] Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555.

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[22] *Twombly*, 550 U.S. at 555.

[23] *Iqbal*, 556 U.S. at 677 (internal citation omitted).

[24] *Id.* at 676.

[25] *Id.* at 678.

[26] *Id.* at 676.

[27] *Id.* at 677.

to infer more than the mere possibility of liability, the complaint has "alleged–but not shown–that the pleader is entitled to relief."[28]  When the claims in a complaint have not crossed the line from conceivable to plausible, those claims must be dismissed.[29]

## III.   DISCUSSION

### A.  Equal Protection claim[30]

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."[31]  To prove a violation under this clause, plaintiffs must show the government (1) treated people similarly situated to plaintiffs differently and (2) the government's disparate treatment was motivated by discriminatory intent.[32] "The goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination. The similarly situated group is the control group."[33]  At the motion to dismiss stage, plaintiffs "need only allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendants . . . could have been prosecuted, but were not."[34]

---

[28] *Id.* (internal quotation omitted).

[29] *Twombly*, 550 U.S. at 570.

[30] Equal protection claims typically turn on whether the government's acts survive the applicable level of scrutiny.  Where classification is based on impingement of a fundamental right, such as speech, the government's acts must survive strict scrutiny. *Hoffman v. United States*, 767 F.2d 1431, 1435 (9th Cir. 1985).  Here, defendants have not argued that selective enforcement based on the plaintiffs' viewpoints could survive strict scrutiny, so I do not reach that issue.

[31] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citations omitted).

[32] *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted); *see also Wayte v. U.S.*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Laughlin*, 33 F.3d 60 (9th Cir. 1994) (holding that for selective prosecution claim plaintiffs must prove "(1) others similarly situated have not been prosecuted; and (2) that the prosecution was based on an impermissible motive").

[33] *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995) (citations omitted).

[34] *Lacey v. Maricopa Cnty.,* 693 F.3d 896, 920 (9th Cir. 2012).

1    Accepting all factual allegations as true and making all inferences in plaintiffs' favor, the

2    complaint adequately alleges an Equal Protection claim.  As to their identification of a similarly

3    situated group that was treated differently, plaintiffs allege that other people, such as children,

4    mark public sidewalks in Las Vegas with chalk and are not cited or arrested.  Plaintiffs allege that

5    when they mark on public sidewalks they are similarly situated to these other chalkers for all

6    relevant purposes.  But plaintiffs were cited and arrested for defacing public property.

7    Defendants argue that plaintiffs must compare their group to a narrower class than

8    everyone who uses sidewalk chalk on sidewalks in Las Vegas.  But the purpose of identifying a

9    substantially similar group, or control group, is to "isolate the factor allegedly subject to

10   impermissible discrimination."  Here, the factor subject to impermissible discrimination is the

11   content of plaintiffs' chalked messages: messages critical of Metro.  Isolating that factor, it is

12   proper to compare plaintiffs to other sidewalk chalkers that do not write messages critical of

13   Metro, which here plausibly includes children who write with chalk on sidewalks within Metro's

14   jurisdiction.

15    Further, because plaintiffs were cited and arrested after writing messages critical of

16   defendants, plaintiffs have sufficiently alleged that defendants discriminated against them because

17   of their viewpoint; in others words, that defendants' selective enforcement was motivated by

18   discriminatory intent.  Defendants may later prove that, in fact, they either did not selectively

19   enforce § 260.330 or they did not enforce with discriminatory intent.  But plaintiffs' allegations

20   are sufficient for their Equal Protection claim to survive the present motion.

21    Defendants also argue the defendant officers should be entitled to qualified immunity for

22   any Equal Protection violation.  The doctrine of qualified immunity protects government officials

23   from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official

24   violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the

25   time of the challenged conduct."[35]  But defendants fail to provide any authority or analysis

26   suggesting that plaintiffs' selective enforcement claim would not be a clearly established

27   

28   [35] *Wood v. Moss,* 134 S. Ct. 2056, 2066-67, 188 L. Ed. 2d 1039 (2014).

violation of law if proven.[36]  Indeed, that the government cannot discriminatorily enforce a statute based on someone's viewpoint has been clearly established by a number of controlling cases.[37] At this stage, defendants are therefore not entitled to qualified immunity on plaintiffs' Equal Protection claim.

### B. First Amendment claims

Defendants argue that plaintiffs' First Amendment claims[38] should be dismissed because (1) Nevada's graffiti statute is a reasonable restriction on plaintiffs' speech, and (2) any allegation that defendants have selectively enforced the statute must be brought solely as an equal protection claim.

Regardless of whether Nevada's graffiti statute is a reasonable restriction on plaintiffs' speech,[39] plaintiffs have adequately alleged a First Amendment claim based on their allegation that defendants selectively enforced the statute.  "[D]iscriminatory enforcement of a speech restriction amount[ing] to viewpoint discrimination i[s] [a] violation of the First Amendment,"

---

[36] In fact, defendants appeared to concede this point at oral argument.

[37] *See, e.g. Menotti,* 409 F.3d at 1146-47; *Foti,* 146 F.3d at 635; *Hightower*, No. C-12-5841 EMC, 2014 WL 7336677, at *13.

[38] I collectively analyze plaintiffs' claims brought under the First Amendment, including claims for free speech infringement, chilling, and right to assembly.  Defendants provide scant points and authorities when addressing whether the chilling and assembly claims should be dismissed. *See* L.R. 7-2.  Moreover, whether any of these claims is viable appears largely to depend on the same First Amendment analysis. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (chilling claim turns on whether plaintiff has constitutionally protected speech right that was deterred); *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (holding that, generally, the right to assemble can be exercised only with another of the rights guaranteed by the First Amendment); *see also Presser v. Illinois*, 116 U.S. 252, 267 (1886) ("the right peaceably to assemble was not protected . . . unless the purpose of the assembly was to petition the government for redress of grievances").

[39] In their papers and at oral argument, the parties extensively dispute whether N.R.S. § 260.330 applies to marking on public sidewalks with sidewalk chalk. Some courts have held that chalking violates graffiti laws in other states.  But Nevada's legislative history, and the wording of § 260.330, both indicate that chalking might not be prohibited under Nevada's graffiti statute.  I may later need to determine whether § 260.330 applies to chalking, but I need not reach this issue now because plaintiffs' First Amendment claims survive a motion to dismiss regardless of whether that statute applies to chalking.

even where the statute would otherwise be a permissible restriction of speech if equally applied.[40] In other words, a selective enforcement claim based on viewpoint discrimination can be brought under both the First and Fourteenth Amendments.  "[T]he fundamental principle behind content analysis is that government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views."[41] The Ninth Circuit explains why courts must dive deeper than a statute's surface when looking for First Amendment violations:

> Courts must be willing to entertain the possibility that content-neutral enactments are enforced in a content-discriminatory manner. If they were not, the First Amendment's guarantees would risk becoming an empty formality, as government could enact regulations on speech written in a content-neutral manner so as to withstand judicial scrutiny, but then proceed to ignore the regulations' content-neutral terms by adopting a content-discriminatory enforcement policy.[42]

To bring a selective-enforcement claim under the First Amendment, plaintiffs must point "to a control-group against which the plaintiff may contrast enforcement practices."[43]  This is a similar showing to what plaintiffs need when alleging their equal protection claim.[44]  Because plaintiffs have adequately alleged a selective enforcement claim under the Equal Protection

---

[40] *Menotti v. City of Seattle,* 409 F.3d 1113, 1146-47 (9th Cir. 2005); *see also Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998); *United States v. Montes*, 421 F. App'x 670, 673-74 (9th Cir. 2011) ("As a matter of law, Defendants violated Plaintiff's First Amendment right by practicing viewpoint discrimination through selective enforcement of 38 C.F.R. section 1.218."); *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (rejecting argument "that plaintiffs' selective enforcement claims cannot be brought under the first amendment" because "we have made clear that such [a selective enforcement claim is] available, but have usually not categorized it as an 'as-applied' First Amendment challenge"); *Moss v. U.S. Secret Serv*., 572 F.3d 962, 970 (9th Cir. 2009); *Hightower v. City & Cnty. of S.F.*, No. C-12-5841 EMC, 2014 WL 7336677, at *13 (N.D. Cal. Dec. 24, 2014) ("Defendants argue that a claim for viewpoint discrimination must be analyzed exclusively under the Equal Protection Clause. Not so.").

[41] *Hoye*, 653 F.3d at 851.

[42] *Id.*

[43] *Id.*

[44] *Id.*; *see also Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1153 (9th Cir.2007).

1    Clause based on viewpoint discrimination, they have also adequately alleged their First

2    Amendment claims.

3            Further, for the same reasons that qualified immunity cannot shield defendants from any

4    equal protection claim based on selective enforcement, qualified immunity will not shield

5    defendants against a selective enforcement claim brought under the First Amendment.

6    **C.  Fourth Amendment and false imprisonment claims**

7            Plaintiffs' Fourth Amendment claims hinge on the allegation that defendants lacked

8    probable cause to arrest them.  "Probable cause to arrest exists when officers have knowledge . . .

9    sufficient to lead a person of reasonable caution to believe that an offense has been . . .

10   committed by the person being arrested."[45]  The "Fourth Amendment regulates conduct rather

11   than thoughts . . . and it promotes evenhanded, uniform enforcement of the law."[46]  Fourth

12   Amendment reasonableness is therefore "an objective inquiry," not a subjective one.[47]  The

13   question is whether "the circumstances, viewed objectively, justify [the challenged] action."[48]  If

14   a reasonable officer would have believed an arrest was justified, based on the knowledge the

15   arresting officer actually had, the action was reasonable "whatever the subjective intent"

16   motivating the arresting officer.[49]

17           The "reasonable officer" is justified in believing a crime has been committed even where

18   this belief is based on a reasonable mistake of fact or law.[50]  Therefore, if a reasonable officer

19

20

21    _____

22           [45] *Hoye*, 653 F.3d at 855 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

23           [46] *Heien v. N. Carolina*, 135 S. Ct. 530, 539 (2014).

              [47] *Id.*

24           [48] *Scott v. United States*, 436 U.S. 128, 138 (1978).

25           [49] *Wren v. United States*, 517 U.S. 806, 814 (1996) ("But the constitutional basis for

26    objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not
      the Fourth Amendment.  Subjective intentions play no role in ordinary, probable-cause Fourth

27    Amendment analysis.").

28           [50] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

9

could have been mistaken about whether defendant's acts were prohibited by a law or mistaken about whether the defendant committed the acts in question, probable cause exists.[51]

In this case, defendants arrested plaintiffs for marking public sidewalks with chalk in violation of § 260.330.  The statute prohibits defacement.  A number of cases have found similar defacement statutes violated by chalking or other non-permanent markings.[52]  Given the lack of Nevada law on point and authority from other states suggesting that chalking can constitute defacement, a reasonable officer could at least be mistaken as to whether the statute applied.

A reasonable officer could believe plaintiffs violated § 260.330.[53]  The Fourth Amendment analysis is objective, and the defendants' alleged subjective intent to selectively enforce the statute does not negate the objective probable cause to arrest plaintiffs for violating § 260.330.  Plaintiffs have alleged no facts to indicate that a reasonable officer under the circumstances would not have believed plaintiffs violated this statute.[54]  Because a reasonable officer could have believed Nevada's graffiti statute applied to sidewalk chalk, and because the Fourth Amendment standard does not consider the officer's subjective intent in making an arrest, plaintiffs have not stated a valid Fourth Amendment claim.  I therefore dismiss this claim.

Even if plaintiffs had properly alleged a Fourth Amendment claim, the defendant officers have qualified immunity from that claim.  As explained above in the context of the Fourth Amendment claim, whether the plaintiffs violated the Nevada statute, and thus whether there was

---

[51] *Id.*

[52] *See, e.g., Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011); *United States v. Murtari,* No. 5:07-CR-387, 2007 WL 3046746 (N.D.N.Y. Oct. 16, 2007); *In re Nicholas Y,* 102 Cal. Rptr.2d 511 (Cal.App.4th 2000), rehearing denied (Apr. 11, 2011).

[53] *See, e.g., Mahoney*, 642 F.3d 1112; *United States v. Murtari,* No. 5:07-CR-387, 2007 WL 3046746 (N.D.N.Y. Oct. 16, 2007); *In re Nicholas Y,* 102 Cal. Rptr.2d 511 (Cal.App.4th 2000), rehearing denied (Apr. 11, 2011).

[54] For example, plaintiffs have not alleged that the officers were told or had any reason to believe that chalking did not fall under the statute.  Instead, plaintiffs argue that the face of the statute does not apply to chalking because some element of "permanence" or "damage" is implied in the statute's use of the term "defacement."  But the Fourth Amendment's objective standard, § 260.330's language, and other cases interpreting similar statutes makes clear that a reasonable officer could mistakenly believe the statute applies to chalking public sidewalks.

10

1    probable cause to detain them, was not clearly established at the time of the arrest.  Thus, the

2    officers are entitled to qualified immunity.[55]

3         Also, because Nevada law on false imprisonment and unlawful arrest is nearly identical to

4    federal law,[56] plaintiffs have not alleged a plausible claim for false arrest or false imprisonment

5    under Nevada law.[57]  I therefore dismiss these claims as well.

6         **D.  Substantive due process claim**

7         "Where a particular amendment provides an explicit textual source of constitutional

8    protection against a particular sort of government behavior, that Amendment, not the more

9    generalized notion of substantive due process, must be the guide for analyzing plaintiffs'

10   claims."[58]  Here, all of plaintiffs' claims fall directly under the First Amendment, Fourth

11   Amendment, or Equal Protection Clause.  Plaintiffs provide no authority or analysis suggesting

12   that any of their constitutional claims do not arise from one of these explicit sources of

13   constitutional protection.  I therefore dismiss plaintiffs' substantive due process claims.

14        **E.  Procedural due process claim**

15        A "procedural due process claim challenges the procedures used in effecting a

16   deprivation."[59]  To adequately allege a claim for procedural due process, a plaintiff must establish

17   the existence of a life, liberty, or property interest for which the protection is sought,[60] and allege

18   what process was constitutionally inadequate.[61]

19

20        [55] *Wood v. Moss,* 134 S. Ct. 2056, 2066-67, 188 L. Ed. 2d 1039 (2014).

21        [56] *Ramirez v. City of Reno*, 925 F. Supp. 681, 690 (D. Nev. 1996) ("A law enforcement
     officer is authorized by state statute to detain any person whom the officer encounters under
22   circumstances which reasonably indicate that the person has committed, is committing or is about
     to commit a crime.").

23        [57] *Fayer v. Vaughn*, 649 F.3d 1061, 1064-65 (9th Cir. 2011) (dismissing Nevada false
24   imprisonment claims because the plaintiff failed to allege Fourth Amendment claims).

25        [58] *Patel v. Pendman*, 103 F.3d 868, 874 (9th Cir. 1996); *see also Albright v. Oliver*, 510
     U.S. 266, 273 (1994) (same).

26        [59] *Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 957 (9th Cir. 1991).

27        [60] *Ky. Dept. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).

28        [61] *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

1    "Failure to observe the requirements of the fourth amendment will not support an

2    independent claim for a failure of due process, particularly . . . where the facts supporting each

3    claim are identical."[62]  "If the fourth amendment, which specifically governs the standards of

4    arrest has not been breached, neither will the plaintiff be able to state a claim under the more

5    general fourteenth amendment standard."[63]

6    Other than the conclusory allegation that they were given insufficient "notice" that they

7    were going to be arrested, plaintiffs fail to allege what processes were constitutionally inadequate.

8    In fact, plaintiffs' complaint indicates that defendants gave them a month's notice before arresting

9    them.  Plaintiffs' factual allegations appear to be properly analyzed under the First and Fourth

10   Amendment and the Equal Protection Clause, not under the Due Process Clause.  I therefore

11   dismiss plaintiffs' procedural due process claim.

12   **F.  Negligent training, supervision, and retention claims**

13   Defendants argue they are shielded from liability for plaintiffs' negligence claims by the

14   discretionary immunity doctrine.  In Nevada, discretionary immunity applies to an act that results

15   from a decision involving an element of individual judgment, where the judgment is based on

16   considerations such as social, economic, or political policy.[64]  I do not determine the

17   government's "subjective intent in exercising the discretion conferred by statute or regulation, but

18   [rather focus] on the nature of the actions taken and on whether they are susceptible to policy

19   analysis."[65]

20   Nevada looks to federal case law to determine the scope of discretionary immunity,[66] and

21   federal case law consistently holds training, retention, and supervision activities are subject to

22

23

24   _____

     [62] *Simons v. Marin Cnty.*, 682 F. Supp. 1463, 1470 (N.D. Cal. 1987).

25   [63] *Id.*

26   [64] *Martinez v. Maruszczak,* 123 Nev. 433, 168 P.3d 720, 729 (2007)

27   [65] *Id*.

28   [66] *Id.*

1    discretionary immunity.[67]  This is because "decisions relating to the hiring, training, and

2    supervision of employees usually invoke policy judgments of the type Congress intended . . .

3    discretionary [immunity] to shield."[68]

4         Plaintiffs have provided no authority or argument to suggest a different outcome here.  I

5    therefore dismiss plaintiffs' negligent supervision, hiring, and training claims.

6         **G. *Monell* claim**

7         A municipality is not liable for a *Monell* claim under a theory of respondeat superior;

8    instead, plaintiffs must plausibly allege that Metro was responsible for a policy, practice, or

9    custom that caused an alleged constitutional violation.[69]

10        A plaintiff can show a municipality is responsible for a policy, practice, or custom: (1) by

11   showing "a longstanding practice or custom which constitutes the 'standard operating procedure'

12   of the local government entity;" (2) "by showing that the [relevant] decision-making official was,

13   as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to

14   represent official policy in the area of decision;" or (3) "by showing that an official with final

15   policymaking authority either delegated that authority to, or ratified the decision of, a

16   subordinate."[70]  A municipal policy, practice, or custom "may be inferred from widespread

17   practices or evidence of repeated constitutional violations for which the errant municipal officers

18   were not discharged or reprimanded."[71]

19

20

21   _____

22   [67] *Vickers v. U.S.,* 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases); *Beckwith v. Pool*,
     case no. 2:13–cv–125–JCM–NJK, 2013 WL 3049070, *5–6 (D.Nev. June 17, 2013) ("The

23   decision of which police officers to hire, and how to train and supervise them, are an integral part
     of governmental policy-making or planning."); *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*,

24   No. 2:12-CV-1635 JCM-VCF, 2014 WL 4471542, at *10 (D. Nev. Sept. 10, 2014).

25   [68] *Vickers,* 228 F.3d 944, 950.

     [69] *Ulrich v. City and County of City of Pasco,* 241 F.3d 1067, 1083 (9th Cir.2001).
26
     [70] *Id.*

27   [71] *Nadell v. Las Vegas Metro. Police Dep't.,* 268 F.3d 924, 929 (9th Cir. 2001) (internal

28   quotation marks and citation omitted).

1    Plaintiffs have alleged that multiple officers harassed and monitored them; requested an

2    arrest warrant; arrested plaintiffs; and coordinated with the district attorney, a judge, and the city

3    manager.  These acts occurred over the course of a month and created a high-profile public debate

4    about whether the officers' actions were constitutional.  The repeated alleged constitutional

5    violations, the number and nature of actors involved, and the high-profile nature of the dispute

6    make plausible the claim that Metro instituted the driving policy behind the alleged selective

7    enforcement, tacitly approved the custom of selective enforcement, or knew of the custom and

8    failed to address it. Thus, this claim survives.

9    **H.  Sacco's standing**

10    To carry her burden of establishing a constitutional injury to support her First Amendment

11    claim that defendants chilled her free speech, Sacco must provide adequate details about how her

12    speech was chilled.[72]  Defendants argue that "Sacco's thinly veiled assertion of an intent to chalk

13    on public sidewalks in the future does not support a finding of the actual or imminent injury that

14    is required."[73]

15    Sacco alleges she was at the July 18th chalking event and intended to chalk in protest with

16    the other plaintiffs.  She alleges she was intimidated by the police's presence—which came after

17    other plaintiffs had been cited for chalking.  Drawing all inferences in Sacco's favor, she has

18    adequately alleged that she intends to continue chalking to protest Metro but fears being arrested

19    or cited given that defendants have already arrested and cited the other plaintiffs.  I therefore deny

20    defendants' motion to dismiss Sacco's claims.

21    **I.   Claims against the defendant officers in their official capacities**

22    States and state officers sued in their official capacities are not "persons" for the purposes

23    of an action under 42 U.S.C. § 1983, and generally they may not be sued under the statute.[74]

24

25

26    [72] *Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010).

    [73] (Dkt. #6 at 25.)

27    [74] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *Aguou v. Commonwealth Ports Auth .,* 316 F.3d 899, 901 (9th Cir. 2003).

28

1   Official capacity claims are an alternative way of pleading a claim against the entity for which the

2   defendant is an officer.[75]   To state an official capacity claim, a plaintiff must meet the same

3   standard for suing a municipality.[76]

4        Plaintiffs brought claims against Metro as a municipality, and they fail to identify any

5   need to maintain redundant claims against the officers in their official capacities.  It is well-

6   established that official-capacity claims are redundant of claims against the relevant

7   municipality.[77]   I therefore dismiss the official-capacity claims against the individual defendants.

8   **J.   Prayer for punitive damages**

9   "[A] municipality is immune from punitive damages under 42 USC § 1983."[78]   But the

10   individual defendants may be liable for punitive damages if they were recklessly indifferent to

11   plaintiffs' constitutional rights.[79]   This standard is met if defendants' "conduct is shown to be

12   motivated by evil motive or intent, or when it involves reckless or callous indifference to the

13   federally protected rights of others."[80]

14        Defendants argue generally that plaintiffs have not made any allegations rising to the level

15   of "reckless indifference."  But taking all of plaintiffs' allegations as true, it is plausible that

16   defendants selectively enforced the graffiti statute against plaintiffs in callous indifference to their

17

18   [75] *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.,* 599 F.3d

19   1108, 1111 (9th Cir. 2010).

20   [76] *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989).

21   [77] *Kentucky v. Graham*, 473 U.S. 159, 165 n.14 (1985) (holding that "[t]here is no longer a
need to bring official-capacity actions against local government officials, [because] under *Monell*,

22   . . . local government units can be sued directly" (citations omitted)); *Busby v. City of Orlando*,
931 F.2d 764, 776 (11th Cir. 1991).  A number of district courts in the Ninth Circuit have

23   dismissed official capacity claims as redundant where the relevant municipality is also sued. *See,
e.g., Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2011 WL 5118912, at *5 (E.D. Cal.

24   Oct. 27, 2011); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D.Cal.1996); *Carnell v.
Grimm*, 872 F. Supp. 746, 752 (D. Haw. 1994).

25
     [78] *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981).  Plaintiffs conceded as much at

26   oral argument.

27   [79] *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 969 (9th Cir. 2001).

28   [80] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

1   First Amendment rights.  I therefore will not dismiss plaintiffs' request for punitive damages

2   against the individual defendants.

3           **K.  Leave to Amend**

4           At the end of their response to the motion to dismiss, plaintiffs request leave to amend in

5   the event I grant the motion.[81]  Courts should usually grant leave to amend.[82]  Courts consider

6   five factors when deciding whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to

7   the opposing party, (4) futility of amendment, and (5) whether plaintiffs have previously amended

8   their complaint.[83]

9           Plaintiffs have not yet had an opportunity to amend their complaint in this case, and there

10  is no evidence of bad faith or undue delay.  Given that I have dismissed some of plaintiffs'

11  claims, they should be permitted an opportunity to amend their complaint if sufficient facts exist.

12  **IV.    CONCLUSION**

13          IT IS THEREFORE ORDERED that defendants' motion to dismiss (Dkt. #6) is DENIED

14  in part and GRANTED in part as set forth above.  Plaintiffs' fifth cause of action for

15  unreasonable search and seizure, sixth cause of action for violation of substantive due process,

16  seventh cause of action for unlawful detention, eighth cause of action for violation of procedural

17  due process, tenth cause of action for negligence, and eleventh cause of action for false

18  imprisonment are dismissed.

19          IT IS FURTHER ORDERED that plaintiffs' claims against the defendant officers in their

20  official capacities are dismissed.

21          IT IS FURTHER ORDERED that plaintiffs' claims for punitive damages against Metro

22  are dismissed.

23          IT IS FURTHER ORDERED that should plaintiffs wish to amend their complaint to cure

24  the defects of their dismissed claims, they may file their amended complaint within 14 days of

25

26          [81] (Dkt. #15 at 28.)

27          [82] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

28          [83] *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir. 1998).

entry of this order.  Absent filing of an amended complaint, defendants shall file their answer to the complaint within 21 days of entry of this order.

DATED this 27th day of April, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE