# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BRIAN BALLENTINE, *et al.*,

    Plaintiffs

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,

    Defendants

Case No.: 2:14-cv-01584-APG-EJY

**Order Granting Defendant Christopher Tucker's Motion for Summary Judgment**

[ECF No. 227]

Plaintiffs Brian Ballentine, Catalino Dazo, and Kelly Patterson[1] brought this civil rights lawsuit against the Las Vegas Metropolitan Police Department (Metro) and some of its officers, asserting claims under 42 U.S.C. § 1983, the Nevada Constitution, and Nevada law. I previously granted in part the defendants' motion for summary judgment. ECF No. 207. The only remaining claim is a First Amendment retaliatory arrest claim against Metro Detective Christopher Tucker. The plaintiffs allege that Tucker violated their First Amendment rights by arresting them for writing anti-police messages on sidewalks with chalk.

Tucker now moves for summary judgment, arguing that he is entitled to qualified immunity because probable cause existed for the arrests. Both parties' arguments rely on the Supreme Court of the United States' recent decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). I grant Tucker's motion for summary judgment because he is entitled to qualified immunity.

/ / / /

---

[1] Plaintiff Gail Sacco died on August 27, 2019. ECF No. 228. The plaintiffs filed a suggestion of death on September 17, 2019. More than 90 days have passed, and no one has moved to substitute as Sacco's successor or representative. I therefore dismiss her from this action. Fed. R. Civ. P. 25(a)(1).

## I. BACKGROUND

Ballentine, Dazo, and Patterson are members of the "Sunset Activist Collective," a local activist group. ECF Nos. 176-2 at 10; 176-3 at 11. The plaintiffs have carried out chalking protests on Las Vegas sidewalks since 2011, some of which involved anti-police themes and some which did not. ECF Nos. 176-3 at 11; 176-2 at 10-19, 22; 177-5 at 22. Most of these protests occurred without police interference or with police interaction that did not result in a citation or arrest. *See* ECF No. 177-5 at 33-39. At one event in October 2012, the marshals at the Regional Justice Center (RJC) gave the plaintiffs permission to chalk on the sidewalk so long as they did not chalk the building or the steps. ECF Nos. 177-5 at 33-34; 176-2 at 4; 178-1 at 19-20. The plaintiffs never cleaned up the chalk at their various protests. ECF No. 177-5 at 23.

On June 8, 2013, the plaintiffs were using chalk to write messages that were critical of Metro on the sidewalk in front of Metro's headquarters. ECF No. 176-3 at 8. Sergeant Mike Wallace approached the plaintiffs, told them that graffiti on the sidewalk is against the law, and asked them to stop. ECF No. 175-1 at 41. When it became clear the plaintiffs were not going to cease chalking, Wallace issued a citation to each plaintiff. ECF No. 175-1 at 53-55. The plaintiffs responded that Wallace was wrong and that chalking on the sidewalk was not against the law. ECF No. 176-2 at 23. Patterson requested to speak with a supervisor, so Wallace contacted Lieutenant John Liberty to respond to the scene. ECF Nos. 175-3 at 25-27; 176-2 at 23. On the way, Liberty consulted with a state court judge, a deputy district attorney, and an internal affairs detective to determine whether sidewalk chalking was a crime under Nevada's graffiti statute, Nevada Revised Statutes § 206.330. ECF No. 175-3 at 29-30. Each of those individuals opined that writing on a public sidewalk with chalk was a crime. *Id.*

The graffiti citations that Wallace issued were assigned to Detective Tucker to investigate. ECF No. 175-4 at 12-13. The chalk was still on the sidewalk a few days later, and Tucker saw that it listed names of police officers and referred to murders. *Id.* at 13. As part of Tucker's investigation, he monitored the plaintiffs' social media to track their activities, as he does in other graffiti cases. *Id.* at 14. Tucker learned from the plaintiffs' social media that they referred to themselves as the Sunset 3 and were part of the Sunset Activist Collective, which was known to be associated with protest groups Nevada CopBlock and Occupy LV. *Id.* at 35.

The Las Vegas City Attorney's Office declined to prosecute the citations. ECF No. 190-3 at 3. Assistant Deputy City Attorney Benard Little concluded that sidewalk chalk did not fall within the statute because it was "easily removed" and therefore did not deface the property. *Id.* Little also suggested there was no intent to deface and thus criminal intent was lacking. *Id.* Finally, Little expressed his concern about First Amendment issues related to "complaint based graffiti enforcement" because that "necessarily centers around the content of any message which the First Amendment of the U.S. Constitution clearly prohibits." *Id.* Clark County Chief Deputy District Attorney Scott Mitchell was then contacted for a second opinion. ECF No. 190-4. In Mitchell's opinion, chalking was a crime under § 206.330, and if abatement costs were over $250, then it would be a gross misdemeanor. *Id.*

On July 13, 2013, Ballentine and Patterson chalked more messages critical of Metro on public sidewalks in front of Metro's headquarters. ECF Nos. 175-4 at 17-18, 20; 176-2 at 27. Metro Detective William Matchko observed the plaintiffs but did not have time to stop and address them. ECF Nos. 190-1 at 98-99; 192-1; 191-3. No officer approached the plaintiffs on that date. ECF No. 176-2 at 28. Matchko indicated in an email to Tucker and others that if someone prepared an arrest warrant, he would identify the plaintiffs. ECF No. 191-3.

On July 18, Patterson, Ballentine, and Dazo appeared at the RJC for the hearing on the citations, but the citations were not prosecuted. ECF No. 177-5 at 40.  They then chalked messages critical of Metro in front of the RJC. ECF Nos. 175-4 at 24-26; 176-2 at 28-29; 177-5 at 40.  Plaintiff Gail Sacco was at the event but stayed in her car for fear of being arrested or cited. ECF Nos. 176-2 at 28-29; 179-2 at 9-10.  Ballentine and Patterson claim that others, including children, were also chalking. ECF Nos. 178-3 at 32; 178-4 at 7.

Tucker was at the RJC and he asked Ballentine if the plaintiffs were going to clean up after themselves when they were done. ECF No. 175-4 at 26-27.  Ballentine did not respond. *Id.* Tucker told the protestors that one of the messages written in chalk was inaccurate because the message stated no police officer had ever been put on trial, but Tucker stated one had been. ECF Nos. 176-2 at 29; 177-6 at 2.  According to Patterson, an unidentified officer was trying to get personal information from the protestors. ECF No. 176-2 at 29.  Tucker took pictures of the chalk messages, some of which contained profanity and referred to officer-involved shootings. ECF No. 175-4 at 27.  No one told the plaintiffs they could not chalk on the sidewalk that day. ECF No. 177-6 at 2.

Tucker prepared a declaration of arrest relating to the July 13 and July 18 incidents. ECF No. 175-4 at 34.  In the declaration of arrest, he referred to the content of the messages, including "fuck pigs" and "fuck the cops." *Id.*  Tucker testified at his deposition that he put that information in the declaration of arrest to give context. *Id.* at 36.

On August 9, 2013, a criminal complaint was filed against Patterson, Ballentine, and Dazo for gross misdemeanors of conspiracy to commit placing graffiti and placing graffiti on or otherwise defacing property. ECF No. 176-5 at 25.  They were charged with two counts of each

crime based on the July 13 and July 18 incidents. *Id.* The criminal complaint referred to the fact that the alleged graffiti included "derogatory statements and profanity. . . ." *Id.* at 26.

The next day, Ballentine and Patterson appeared at another planned protest where they were arrested. ECF No. 176-2 at 31-32. Dazo was not at the protest and was never arrested. ECF No. 176-3 at 9. The Clark County District Attorney dropped the charges after learning that officers were present at the RJC but did not tell the plaintiffs to stop, and some officers or marshals possibly told the plaintiffs where they could and could not chalk. ECF No. 178-1 at 11. The District Attorney also decided that a prosecution was not a good use of limited resources. *Id.* The plaintiffs then filed this civil rights lawsuit against Wallace, Liberty, Tucker, and Metro. The only remaining claim is the First Amendment retaliatory arrest claim against Tucker.

## II.  DISCUSSION

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material

fact that could satisfy its burden at trial."). However, when the moving party "bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

Tucker asserts qualified immunity as an affirmative defense. Qualified immunity protects government officials from money damages unless (1) the plaintiff presents evidence from which a reasonable jury could find that the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Tuuamalemalo v. Greene*, 946 F.3d 471, 476-77 (9th Cir. 2019). "Summary judgment on qualified immunity is not proper unless the evidence permits only one reasonable conclusion." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000).

**A. First Amendment Retaliation**

The first prong of qualified immunity requires me to determine whether, viewing the facts in the light most favorable to the plaintiffs, a reasonable jury could find that Tucker violated the plaintiffs' First Amendment rights. Tucker argues that the plaintiffs have failed to establish that he violated their constitutional rights because, under the Supreme Court's decision in *Nieves v. Bartlett*, the presence of probable cause defeats the plaintiffs' First Amendment retaliatory arrest claim. He also argues that the plaintiffs have not shown that he wanted to chill their speech and that this desire was the but-for cause of the arrests. The plaintiffs respond that Tucker cannot demonstrate there was probable cause to arrest or cite them and that Tucker arrested them because of the content of their speech. They contend that even if Tucker had

probable cause, their claim survives under *Nieves* because chalking on a sidewalk is generally insufficient to provoke an arrest.

To establish a First Amendment retaliation claim, the plaintiffs must demonstrate that (1) they engaged in a constitutionally protected activity; (2) as a result, they were subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). It is undisputed that the plaintiffs were engaged in protected speech activities when they used chalk to write their messages on city sidewalks. I previously ruled that citing and arresting the plaintiffs would chill a person of ordinary firmness. ECF No. 207 at 10 (citing *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013)); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (holding that arresting someone in retaliation for the exercise of free speech rights is sufficient to chill speech). I also ruled that Tucker had probable cause for the arrest. ECF No. 36 at 2, 9-11. Consequently, what remains is whether the existence of probable cause defeats the third element, causation.

In *Nieves*, the Supreme Court held that probable cause for an arrest will generally defeat a retaliatory arrest claim because the presence of probable cause suggests that the arrest was objectively reasonable and that the officer's animus is not what caused the arrest. 139 S. Ct. at 1724-26. However, the Supreme Court held that

> a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so. In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech.

*Id.* at 1727 (citation omitted). Thus, to establish a First Amendment retaliatory arrest claim when probable cause exists, a plaintiff must show objective evidence that he was arrested for

7

committing a crime (e.g., jaywalking) while engaged in protected speech while others committing the same crime but not engaged in protected speech were not arrested. *Id*. This showing helps establish that non-retaliatory grounds were insufficient on their own to provoke the arrest. *Id*.

After making that showing, the plaintiff's claim may proceed in the same manner as claims where there was no probable cause. *Id*. When the plaintiff has shown the absence of probable cause, his claims are governed by the test in *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977). *Id.* at 1725. Under this test, once the plaintiff shows that retaliation was a substantial or motivating factor for the arrest, "'the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation.'" *Id*. (quoting *Lozman v. Riviera Beach*, 138 S. Ct. 1945, 1952-53 (2018)).

Here, the plaintiffs have presented evidence from which a reasonable jury could conclude that they were arrested for chalking while others who chalked but did not engage in the same sort of protected speech had not been arrested. The plaintiffs' attended at least nine chalking protests between 2011 and 2013 where they were not cited for chalking and were not told by law enforcement officers that chalking on a city sidewalk is illegal. *See* ECF No. 177-5 at 33-39. The plaintiffs were first cited two years after they began their chalking protests. ECF No. 175-1 at 53-54. The City Attorney declined to prosecute those citations because he found that sidewalk chalk did not fall within the graffiti statute and he was concerned about First Amendment issues related to the citations. ECF No. 190-3 at 3. The plaintiffs also presented evidence that other individuals were chalking at the RJC and there is no evidence those people were arrested.

Tucker concedes that other Metro "officers may have acted differently" when addressing an individual chalking on the sidewalk. ECF No. 236 at 4. Although he argues that the plaintiffs

have not shown that he selectively enforced the statute against them, *Nieves* directs me to look to whether Metro officers typically arrest individuals for chalking on sidewalks, not whether Tucker usually arrests people for doing so. Tucker presents no evidence that Metro has ever arrested anyone besides the plaintiffs for chalking on the sidewalk. And because a reasonable jury could find that officers typically exercise their discretion not to arrest someone for chalking on sidewalks, the plaintiffs' claims fall within the selective enforcement exception in *Nieves*. Consequently, the *Mt. Healthy* test applies.

The plaintiffs have met their initial burden under that test by presenting evidence from which a reasonable jury could conclude that the anti-police content of the chalkings was a substantial or motivating factor for the arrests. Tucker included in his case report information about the plaintiffs' association with CopBlock. ECF Nos. 192-1 at 2. Tucker saw the plaintiffs chalking at the RJC but did not tell them to stop. Instead, he took photos and challenged the content of the messages by disputing the accuracy of their speech. And in the declaration of arrest, Tucker referred to the content of the messages and sought arrest warrants instead of simply citing the plaintiffs. A reasonable jury could conclude that the content of the chalkings was a substantial or motivating factor for the arrests.

The burden thus shifts to Tucker to show that he would have arrested the plaintiffs regardless of the content of their speech. Tucker contends that he included the plaintiffs' anti-police affiliations in the declaration of arrest to allow the magistrate judge to evaluate any First Amendment issues related to the arrest. ECF No. 227 at 15-16. He also argues that he sought the warrants because the citations previously issued to the plaintiffs did not stop them from chalking on the sidewalk. *Id* at 15. While a jury may credit Tucker's explanations, it also could disbelieve that Tucker would have arrested the plaintiffs even in the absence of the protected speech given

the evidence discussed above. Therefore, the plaintiffs have presented evidence from which a jury could find that Tucker violated their First Amendment rights.

### B. Clearly Established Right

The second prong of qualified immunity requires me to determine whether the plaintiffs' constitutional rights were clearly established at the time of the arrests. Tucker argues the plaintiffs' rights, defined according to the particular facts of this case, were not established at the time of the arrests. He also contends that an intra-circuit split existed at the time of the arrests as to whether probable cause defeats a retaliatory arrest claim. And he contends the plaintiffs cannot rely on *Nieves* as clearly established law because that case did not exist at the time he acted. The plaintiffs respond that the Ninth Circuit established as early as 2006 that an officer may not arrest an individual in retaliation for that individual's speech. They also contend there was no intra-circuit split at the time of the arrests.

The plaintiff bears the burden of showing that the right allegedly violated was clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). To determine that issue, I look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quotation omitted). Although there need not be "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. (quotation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted). Thus, I must not "define clearly established law at a high level of generality." *Id.* (quotation omitted). "The

dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotation omitted) (emphasis in original). The law is clearly established if it gave the officer fair warning that his conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The question of whether *Nieves* changed the scope of clearly established law at the time Tucker acted is a difficult one. In my August 2017 summary judgment order, I stated that the law was clearly established at the time of these August 2013 arrests because "a reasonable officer would know that he cannot use his authority to retaliate against someone based on the content of that person's speech." ECF No. 207 at 10. That remains true post-*Nieves*, with the caveat that if the officer had probable cause for the arrest, the offense must be one that would not ordinarily provoke an arrest. A reasonable officer in 2013 would know that chalking does not ordinarily provoke an arrest because there is no evidence that Metro ever arrested anyone for the offense despite officers observing chalking activity, and even citations for the offense were not prosecuted. Tucker was on fair notice that he could not make a retaliatory arrest under these circumstances when he acted in 2013. And that same conduct is still unlawful after *Nieves*, so a reasonable officer in 2013 would have had fair warning that what he was doing was unlawful.

Alternatively, it could be argued that *Nieves* changed the contours of the right at issue, and so a reasonable officer acting in 2013 would not have known everything he needed to know to have fair notice that arresting the plaintiffs would violate their First Amendment rights. Prior to *Nieves*, there was no Ninth Circuit or Supreme Court case advising an officer that if he had probable cause to make the arrest, the critical fact that would make his conduct unlawful was that the offense he was arresting the plaintiff for was not one that would ordinarily result in an arrest.

I need not resolve this issue. I previously ruled that the right to be free from a retaliatory arrest even where probable cause existed was clearly established in the Ninth Circuit. But that

conclusion has been called into question by subsequent case law. My prior ruling was based on *Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) and *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013). ECF No. 207 at 10. In *Skoog*, which was decided in November 2006, the Ninth Circuit established that police action motivated by retaliatory animus was unlawful, even when probable cause existed for that action. The plaintiff in *Skoog* brought a retaliatory arrest claim alleging that the officer arrested him and searched his property in retaliation for him photographing and videotaping police activities. *Id.* at 1226-27. The Ninth Circuit determined that although probable cause existed for the search, the arrestee presented evidence that the officer's animus against him played a substantial factor in why the officer pursued a warrant for the search and arrest. *Id.* at 1235. The Ninth Circuit ultimately found that the officer was entitled to qualified immunity because the "right of an individual to be free of police action motivated by retaliatory animus but for which there was probable cause" was not clearly established at the time of the search and arrest. *Id.* But *Skoog* established that, going forward, the right "to be free of police action for which retaliation is a but-for cause even if probable cause exists for that action" existed in the Ninth Circuit. *Id.*

In *Ford*, the Ninth Circuit held that by July 2007 it was clearly established that police officers may not arrest an individual to retaliate against protected speech, even if probable cause exists. 706 F.3d at 1195-96. The arrestee in *Ford* brought a retaliatory arrest claim against police officers who arrested him after a traffic stop. *Id*. at 1191. The arrestee presented evidence that the officers chose to arrest him because he yelled at them during the traffic stop and told them he thought the stop was racially motivated. *Id.* at 1190-91, 1194-95. The Ninth Circuit ruled that although the officers had probable cause for the arrest, *Skoog* clearly established that probable cause does not defeat a retaliatory arrest claim because it is unlawful for an officer to retaliate

against an individual for his free speech. *Id.* at 1194-96. The Ninth Circuit thus concluded that the officers were not entitled to qualified immunity on the arrestee's First Amendment retaliatory arrest claim. *Id.* at 1196. Both *Skoog* and *Ford* pre-date the August 2013 arrests in this case.[2]

Just a few months after *Ford* was decided but before the arrests in this case, the Ninth Circuit issued *Acosta v. City of Costa Mesa*, 718 F.3d 800, (9th Cir. 2013). There, police officers arrested the plaintiff in January 2006 for violating a municipal code that prohibited disorderly conduct at city council meetings. 718 F.3d at 806-07. Although the Ninth Circuit held the municipal code was unconstitutionally overbroad, it concluded the officers were entitled to qualified immunity because no clearly established law put them on notice that they could not arrest the plaintiff even though they had probable cause. *Id.* at 823-25.

Tucker contends *Acosta* created an intra-circuit split, so the law was not clearly established at the time he acted. I do not believe *Acosta* created an intra-circuit split because that case evaluated whether there was clearly established law at the time of the January 2006 arrest. Because the *Acosta* arrest occurred before the Ninth Circuit's decisions in *Skoog* and *Ford*, the law was not clearly established at that time that officers may not arrest an individual to retaliate against protected speech, even if probable cause existed. But by the time Tucker acted in 2013, the law in the Ninth Circuit was clearly established, based on *Skoog* and *Ford*, that officers could not make a retaliatory arrest even if they had probable cause.

However, while this case was on appeal, the Ninth Circuit issued a split decision in an unpublished case, *Bini v. City of Vancouver*, 745 Fed. App'x 281 (9th Cir. 2018). The *Bini* majority held that because *Ford* and *Acosta* seem to conflict, "[t]hese two holdings have resulted in some confusion about the state of the law in this circuit." *Id.* (citing district court decisions

---

[2] *Ford* was issued in February 2013.

13

that found no clearly established right). The majority stated that "[i]t appears self-evident that, if district courts in our circuit have had significant difficulty identifying the rule established by our cases, our precedent did not 'place[ ] the . . . constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The dissent argued that *Acosta* was "determining the state of the law as it stood in 2006, when Acosta was arrested. . . . The decision has nothing to say about the state of the law in 2014, when Bini was arrested." *Id.* at 283. The dissent noted that by the time the officer acted in 2014, "*Ford* had resolved whatever uncertainty remained in our circuit's case law." *Id.*

While I agree with the dissent's analysis, I do not feel free to ignore the majority's conclusion that the law was not clearly established under *Skoog* and *Ford*. I therefore grant Tucker's motion for summary judgment based on qualified immunity.

## III. CONCLUSION

I THEREFORE ORDER that plaintiff Gail Sacco is DISMISSED as a plaintiff in this action.

I FURTHER ORDER the defendant's motion for summary judgment (**ECF No. 227**) **is GRANTED**. The clerk of court is instructed to enter judgment in favor of defendant Christopher T. Tucker and against plaintiffs Brian Ballentine, Catalino Dazo, and Kelly Patterson, and to close this case.

DATED this 20th day of August, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE